# EXHIBIT 3



Andrew J. Scavotto
**PARTNER**
DIRECT: 314.719.3048
OFFICE: 314.863.0800
andrew.scavotto@stinson.com

April 13, 2023

**VIA FEDEX**

SA Hospital Real Estate Holdings, LLC
Jeffrey Alholm
Lawrence Feigen
3933 South Broadway
St. Louis, MO 63118

With copies to:

Frankel, Rubin, Klein, Payne & Pudlowski, P.C.
231 South Bemiston Avenue, Suite 1111
Clayton, MO 63105
Attn: Mayer Klein

Frank Saidara
10601 Ashton Avenue, Suite 101
Los Angeles, CA 90024

Re: **Notice of Default and Reservation of Rights**

All:

We write regarding the Ground Lease entered into between Twain GL XXV, LLC ("Landlord"), and SA Hospital Real Estate Holdings, LLC ("Tenant"), dated as of December 29, 2021 (as amended or otherwise modified from time to time, the "Ground Lease"), along with the related "Completion and Rent Payment Guaranty" executed by Jeffrey Ahlholm and Lawrence Feigen (the "Guaranty"). A copy of the Guaranty is enclosed for reference.[1]

This letter provides written notice that Tenant is in default under Section 11.03(a) of the Ground Lease because Tenant failed to make rent payments due in January and April, 2023. As of April 6, 2023 the amount of **$747,993.95** is due and owing, consisting of base rent, late charges, and additional rent, along with additional per diem rent that has accrued, and will continue to accrue. Pursuant to Section 11.04 of the Lease, a statement

[1] Unless otherwise defined in this letter, capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Ground Lease and/or Guaranty.

of all amounts due is enclosed, showing the nature and calculation of the past due payments.

Landlord hereby demands that Tenant pay all amounts due and owing within five (5) days of the date of this notice. If Landlord does not receive full payment, then it will take legal action against Tenant and Messrs. Alholm and Feigen (as guarantors) and pursue all available remedies.

In addition, Landlord intends to pursue all available remedies for Tenant's numerous other defaults under the Lease, as identified in letter dated October 3, 2022, which is enclosed and incorporated herein by reference.

Overall, Landlord is concerned—not only about the non-payment and other defaults, but about the lack of communication and transparency regarding Tenant's operations and plans going forward. Our understanding is that Tenant has made several general statements and representations regarding a potential acquisition, or repurchase of its leasehold interest and/or hospital operation, but—despite multiple requests from Landlord—has refused to verify or provide any details about those developments. Please provide us with details regarding those circumstances immediately, including documents sufficient to identify the prospective purchaser(s), including any letter(s) of intent, term sheets, proposed agreements, or other communications regarding those circumstances, or otherwise substantiating Tenant's representations.

Otherwise, Landlord expressly reserves any and all of the rights, powers, privileges, and remedies available to Landlord under the Ground Lease and applicable law, in each case, that have arisen or may arise as a result of the Specified Default. Landlord also reserves its rights and remedies with respect to any other agreements under which the occurrence of the Specified Default automatically becomes a default under, or results in the maturity or acceleration of, such agreement.  No delay by Landlord in acting shall constitute a requirement to make additional disbursements under the Ground Lease or a waiver of the Specified Default or Landlord's rights in connection therewith.  The occurrence and continuation of the Specified Default may result in Landlord incurring attorney's fees and other costs of collection for which Tenant may be liable.

Be advised that the acceptance by Landlord of any further payments to the extent they do not represent timely or full payment of all amounts then due under the Ground Lease, including all accrued and unpaid Rent, late fees, attorneys' fees, or other reimbursable expenses, shall not constitute a waiver by Landlord of any default or breach which may exist under the Ground Lease, including without limitation, the Specified Default.

At no time shall any prior or subsequent course of conduct by Tenant or Landlord directly or indirectly limit, impair, or otherwise adversely affect any of Landlord's rights, interests, or remedies in connection with the Ground Lease or obligate Landlord to agree to, or to negotiate or consider an agreement to, any waiver of any obligation, default or event of

default by Tenant under the Ground Lease or any amendment to any term or condition of the Ground Lease.

If you have any questions concerning this notice, please do not hesitate to contact me. Thank you for your attention to this matter.

Sincerely,

**Stinson LLP**

Andrew J. Scavotto

AJS:sje

Enclosures (2)

# GUARANTY

## COMPLETION AND RENT PAYMENT GUARANTY

**IN CONSIDERATION** of and as an inducement for the granting, execution and delivery by Twain GL XXV, LLC, a Missouri limited liability company ("**Landlord**"), of the Ground Lease (as the same may be amended, modified or restated from time to time, the "**Ground Lease**") dated December 29, 2021, with SA Hospital Real Estate Holdings LLC, a Delaware limited liability company, as tenant ("**Tenant**"), relating to the leasing, improvement, development and use of approximately 7.148 acres of real property located in the city of St. Louis, Missouri, as more particularly described in the Ground Lease (collectively, the "**Premises**"), the undersigned, Jeffrey Ahlholm, a California resident, Lawrence Feigen, a California resident (collectively, the "**Individual Guarantors**"), and SA Hospital Acquisition Group, LLC, a Delaware limited liability company ("**SA Hospital**" and together with the Individual Guarantors, collectively, the "**Guarantor**"), enter into this Completion and Rent Payment Guaranty (this "**Guaranty**"). Guarantor hereby covenants and agrees as follows:

1. Guarantor, jointly and severally with any other undersigned guarantors, unconditionally and irrevocably guarantees to Landlord the full, prompt and unconditional (a) performance of and observance by Tenant of each and every obligation, term, covenant, agreement and condition to be performed or observed by Tenant pursuant to the Lease, (b) Completion (as defined in the Ground Lease) of the Improvements (as defined in the Ground Lease) in accordance with the terms and provisions of the Ground Lease and in compliance with all applicable laws, together with any restoration of the Improvements pursuant to Section 7.03 of the Ground Lease, (c) the indemnity obligations of Tenant contained in the Lease, and (d) any and all costs of collecting such sums or enforcing Landlord's rights under the Ground Lease or this Guaranty (collectively, the "**Obligations**"); provided, however, the Obligations contained in clauses (a) and (b) of this Section 1 shall terminate with respect to SA Hospital upon satisfaction of the Termination Conditions; provided, further, the Obligations contained in this Section 1 shall terminate with respect to the Individual Guarantors upon satisfaction of the Termination Conditions. For purposes of this guaranty, the Termination Conditions are the following conditions: (i) Tenant or Guarantor obtaining a loan or loans from Bank Popular consistent with that certain term sheet from Bank Popular for Guarantor dated November 22, 2021, (ii) Tenant's and Subtenant's consolidated Debt Service Coverage Ratio, tested by Landlord on a trailing six month basis, exceeds 1.40:1.00 when dividing (1) the EBITDAR for such trailing six months by (2) the anticipated next six months of Base Rent, Supplemental Rent, and principal and interest expense payments, all as substantiated to Landlord in Landlord's reasonable judgment, and (iii) Completion of the Work.

2. Guarantor hereby further covenants and agrees to, and with, Landlord that if an event of default under the Lease beyond the expiration of any applicable notice, grace or cure period ("**Event of Default**") shall at any time be made by Tenant in the payment of any "Construction Costs" (as defined below), the payment of Rent, or if Tenant should default in the performance and observance of any of the Obligations contained in the Ground Lease, Guarantor shall, and will, forthwith pay such Construction Costs, all such Rent and and/or any enforcement of this Guaranty. The term "**Construction Costs**" means all hard and soft costs of construction or restoration of the Improvements together with all compensatory damages (excluding consequential, special and punitive damages of any kind), late charges, interest, actual out of pocket costs or fees, reasonable attorneys' fees and actual out of pocket expenses incurred or suffered by Landlord as a result of non-payment of the Construction Costs. Without limiting the generality of the foregoing, Guarantor agrees that, for purposes of this Guaranty, the Construction Costs shall be equal to either of the following (at Landlord's sole option): (i) the aggregate amount of such Construction Costs actually incurred by Landlord from time to time to and including the date on which completion of the Improvements in accordance with the terms of the Ground Lease occurs, together with interest on such amount from the date incurred until the date repaid, at the highest rate of interest permissible under

applicable law, or (ii) (whether or not Landlord completes or intends to complete the Improvements) the estimated amount of such Construction Costs as determined by, at Landlord's sole option, either (A) a court of competent jurisdiction or (B) a construction consultant reasonably acceptable to Landlord and Tenant at any time after an Event of Default by Tenant under the Ground Lease has occurred, in each case less the value of any property, estate or funds surrendered or paid by Tenant to Landlord.  Guarantor agrees that any amount estimated by the construction consultant as aforesaid, and any determination by the construction consultant with respect to industry practices, shall be conclusive for purposes of determining Guarantor's liability hereunder, provided that the construction consultant has made such estimate or determination acting reasonably and in good faith.

3. Guarantor's obligations under this Guaranty shall be binding on Guarantor's successors and assigns.  All references in this Guaranty (a) to Landlord and Tenant shall include their successors and assigns; and (b) to Tenant, shall include any successors-in-interest to Tenant (whether or not directly succeeding Tenant) by reason of an Event of Reorganization (as defined in Paragraph 8 below).

4. The provisions of the Ground Lease may be changed by agreement between Landlord and Tenant without the consent of or notice to Guarantor.  The provisions of the Ground Lease may be changed by agreement between Landlord and any permitted assignee of Tenant or any subsequent assignee without the consent of or notice to Guarantor.  The Ground Lease may be assigned by Landlord or Tenant, and the Premises, or a portion thereof, may be sublet by Tenant, all in accordance with the provisions of the Ground Lease, without the consent of or notice to Guarantor.  This Guaranty shall guarantee the Obligations and payment of Rent so assigned.

5. This Guaranty and Guarantor's obligations hereunder shall continue and remain in full force and effect notwithstanding Landlord's failure or delay from time to time to enforce any of its rights or remedies under the Ground Lease or this Guaranty.

6. If there is an Event of Default by Tenant under the Ground Lease relating to the Obligations, including, without limitation, the payment of Rent, Landlord may proceed against either Guarantor or Tenant, or both, or Landlord may enforce against Guarantor or Tenant any rights that Landlord has under the Ground Lease relating to the Obligations, in equity or under applicable law.  If the Ground Lease terminates and Landlord has any rights against Tenant after termination relating to the Obligations, Landlord may enforce those rights against Guarantor, without giving previous notice to Tenant or Guarantor.  Guarantor hereby agrees that no notice of default need be given to Guarantor, it being specifically agreed and understood that this Guaranty of the undersigned is a continuing guarantee under which Landlord may proceed forthwith and immediately against Tenant or against Guarantor following any breach or default by Tenant.

7. Guarantor hereby expressly and knowingly waives all benefits and defenses under applicable law with respect to the enforcement of this Guaranty, including without limitation:  (a) the right to require Landlord to proceed against Tenant, proceed against or exhaust any security that Landlord holds from Tenant, or pursue any other remedy in Landlord's power; (b) any defense to its obligations hereunder based on the termination of Tenant's liability; (c) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty; and (d) all notices of the existence, creation, or incurring of new or additional obligations.  Landlord shall have the right to enforce this Guaranty regardless of the acceptance of additional security from Tenant and regardless of the release or discharge of Tenant by Landlord or by others, or by operation of any law.

8. The obligations of Guarantor under this Guaranty shall remain in full force and effect and Guarantor shall not be discharged by any of the following events with respect to Tenant or Guarantor:

(a) insolvency, bankruptcy, reorganization arrangement, adjustment, composition, assignment for the benefit of creditors, liquidation, winding up or dissolution; (b) any merger, acquisition, consolidation or change in entity structure, or any sale, lease, transfer, or other disposition of any entity's assets, or any sale or other transfer of interests in the entity (each, an "**Event of Reorganization**"); or (c) any sale, exchange, assignment, hypothecation or other transfer, in whole or in part, of Landlord's interest in the Premises or the Ground Lease. Nothing in this Paragraph 8 shall diminish the effect of any subsequent written agreement between Guarantor and Landlord.

9. Guarantor hereby represents and warrants that it has executed this Guaranty based solely on its independent investigation of Tenant's financial condition. Guarantor hereby assumes responsibility for keeping informed of Tenant's financial condition and all other circumstances affecting Tenant's performance of its obligations under the Ground Lease. Absent a written request for such information by Guarantor, Landlord shall have no duty to advise Guarantor of any information known to it regarding such financial condition or circumstances.

10. Guarantor further agrees that it may be joined in any action against Tenant in connection with the said obligations of Tenant and recovery may be had against Guarantor in any such action. Guarantor hereby expressly waives all benefits and defenses under applicable law to the fullest extent permitted by applicable Law. Guarantor agrees not to exercise any of its rights of subrogation or reimbursement against Tenant until after all amounts due and owing under the Ground Lease have been fully paid. If the foregoing waiver is determined by a court of competent jurisdiction to be void or voidable, Guarantor agrees to subordinate its rights of subrogation and reimbursement against Tenant to Landlord's rights against Tenant under the Ground Lease.

11. Guarantor hereby represents and warrants that, as of the date of the execution of this Guaranty by Guarantor, there is no action or proceeding pending or, to Guarantor's knowledge after due inquiry, threatened against Guarantor before any court or administrative agency which could adversely affect Guarantor's financial condition in a way which would jeopardize Guarantor's ability to satisfy its obligations under this Guaranty. The foregoing representation and warranty shall survive the execution and delivery of this Guaranty and is expressly made for the benefit and reliance of Landlord, and Landlord's partners, members, trustees, lenders, representatives, successors and assigns.

12. This Guaranty shall be one of payment and performance and not of collection. If there is more than one undersigned Guarantor, the term Guarantor, as used herein, shall include and be binding upon each and every one of the undersigned, and each of the undersigned shall be jointly and severally liable hereunder. If there is more than one undersigned Guarantor, Landlord shall have the right to join one or all of them in any proceeding or to proceed against them in any order.

13. Guarantor shall indemnify, defend (with counsel acceptable to Landlord), protect and hold harmless Landlord, and Landlord's partners, members, trustees, lenders, representatives, successors and assigns from and against all liabilities, losses, claims, demands, judgments, penalties, damages, expenses and costs (including all attorneys' fees and costs to enforce any of the terms of this Guaranty or otherwise awarded hereunder) arising from or in any way related to any failure by Tenant or Guarantor to pay the Rent, Construction Costs, or to fully, faithfully and timely perform the Obligations.

14. The term "**Ground Lease**" whenever used in this Guaranty shall be deemed, and interpreted so as, to also include any renewals or extensions of the initial or renewal term(s), as the case may be, and any holdover periods thereunder.

15. All demands, notices and other communications under or pursuant to this Guaranty shall be in writing, and shall be deemed to have been duly given when personally delivered, or three (3) days

after the date deposited in the United States Postal Service, first-class postage prepaid, certified with return receipt requested, or the delivery date designated for overnight courier services (e.g. Federal Express), or the date delivery is refused, addressed to the party at the address set forth below, or at such other address as may be hereafter designated in writing by either party to the other.

> Landlord:
> Twain GL XXV, LLC
> 2200 Washington Avenue
> Saint Louis, MO 63103
> Attention: General Counsel
>
> with a copy of notices to:
>
> Stinson LLP
> 7700 Forsyth Blvd, Suite 1100
> St. Louis, MO 63105
> Attention: Robert Faulkner
>
> Guarantors:
>
> Jeffrey Ahlholm
> Lawrence Feigen
> SA Hospital Acquisition Group, LLC
> 3933 South Broadway
> St. Louis Missouri 63118
> Attention: Jeffrey Ahlholm and Lawrence Feigen
>
> with a copies of notices to:
>
> Frank Saidara
> 10601 Ashton Ave, Suite 101
> Los Angeles, CA 90024

16. Guarantor hereby represents and warrants that it is duly authorized to execute and deliver this Guaranty; that this Guaranty is binding on Guarantor in accordance with its terms; that the terms and provisions of this Guaranty are intended to be valid and enforceable in accordance with its terms; and that the signatory to this Guaranty is duly authorized to bind Guarantor and execute this Guaranty on Guarantor's behalf.

17. Landlord may assign this Guaranty in conjunction with the assignment of all or any portion of Landlord's interest in the Ground Lease, without the necessity of obtaining Guarantor's consent thereto, and any such assignment shall not affect, or otherwise relieve, Guarantor from its obligations or liability hereunder. Guarantor may not assign or otherwise delegate any of its rights or obligations hereunder without first obtaining Landlord's written consent thereto, which consent may be withheld in Landlord's sole discretion. The terms and provisions of this Guaranty shall inure to the benefit of Landlord and Landlord's partners, members, trustees, lenders, representatives, and all of their respective successors and assigns. Guarantor hereby acknowledges and agrees that Landlord is relying upon Guarantor's covenants, representations and warranties contained in this Guaranty in entering into the Ground Lease with Tenant, and Guarantor hereby undertakes to perform its obligations hereunder promptly and in good faith.

**18.** If all or any portion of the obligations guaranteed hereunder are paid or performed and all or any part of such payment or performance is avoided or recovered, directly or indirectly, from Landlord as a preference, fraudulent transfer or otherwise, then Guarantor's obligations hereunder shall continue and remain in full force and effect as to any such avoided or recovered payment or performance.

**19.** All representations and warranties made by Guarantor herein or made in writing pursuant to this Guaranty are intended to and shall remain true and correct as of the time of execution of this Guaranty, shall be deemed to be material, shall survive the execution and delivery of this Guaranty, and shall be relied upon by Landlord and Landlord's partners, members, trustees, lenders, representatives, successors and assigns.

**20.** This Guaranty shall be enforced, governed by and construed in accordance with the laws of the State of Missouri, irrespective of its conflict of law rules. In addition, Guarantor hereby consents to the jurisdiction of any state or federal court located within the County in which the Premises are located and irrevocably agrees that all actions or proceedings arising out of or relating to the Ground Lease and this Guaranty shall be litigated in such courts. Guarantor accepts generally and unconditionally, the nonexclusive jurisdiction of the aforesaid courts and waives any defense of forum non conveniens, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Guaranty. This Guaranty shall be subject to all valid applicable laws and official orders, rules and regulations, and, in the event this Guaranty or any portion thereof is found to be inconsistent with or contrary to any such laws or official orders, rules or regulations, the latter shall be deemed to control, and this Guaranty shall be regarded as modified and shall continue in full force and effect; provided, however, that nothing herein contained shall be construed as a waiver of any right to question or contest any such law, order, rule or regulation in any forum having jurisdiction in the Premises.

**21.** This Guaranty and any exhibits hereto constitute the entire agreement between the parties with respect to the matters covered herein and supersedes all prior agreements and understandings between the parties hereto relating to the subject matter hereof.

**22.** In the event Guarantor fails to perform any of its obligations under this Guaranty or in the event a dispute arises concerning the meaning or interpretation of any provision of this Guaranty, the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay any and all costs and expenses incurred by the other party in enforcing or establishing its rights hereunder, including without limitation, court costs, expert fees, and reasonable attorneys' fees.

**23.** Time is of the essence of this Guaranty.

Notwithstanding anything to the contrary contained in the Ground Lease, this Guaranty or any other document executed in connection therewith, Guarantor agrees that Landlord's direct and indirect lenders (and any person or entity acting as agent with respect thereto) and their respective successors and/or assigns (collectively, "**Lender**") are each third-party beneficiaries of this Guaranty and so long as the applicable loan is outstanding: (i) this Guaranty may not be amended, modified, supplemented, terminated, surrendered, or cancelled without Lender's prior written consent; and (ii) Lender shall have the right to enforce the terms and conditions of the Guaranty.

[SIGNATURES APPEAR ON FOLLOWING PAGES]

IN WITNESS WHEREOF, Guarantors have executed this Guaranty as of the date set forth above.

**GUARANTORS:**

**SA HOSPITAL ACQUISITIONS GROUP, LLC,**
a Delaware limited liability company

By: _____
    Lawrence Feigen
    Co-Manager


By: _____
    **Jeffrey Ahlholm**, an individual and
    resident of the State of California

By: _____
    **Lawrence Feigen**, an individual and
    resident of the State of California

IN WITNESS WHEREOF, Guarantors have executed this Guaranty as of the date set forth above.

**GUARANTORS:**

**SA HOSPITAL ACQUISITIONS GROUP, LLC,**
a Delaware limited liability company

By: _____
    Lawrence Feigen
    Co-Manager


By: _____*[signature]*_____
    Jeffrey Ahlholm, an individual and
    resident of the State of California


By: _____
    Lawrence Feigen, an individual and
    resident of the State of California



Invoice Number: 2023-4.2

DATE: **4/6/2023**

TO: **Broadway South City Hospital**

FROM: Andrea Ferguson
2200 Washington Avenue
St. Louis, MO 63103
Phone: 314-300-4214
andrea.ferguson@TwainFinancial.com

RE: **Broadway South City Hospital Ground Lease**

| Due Date | Rent Period | Description | | Amount |
|---|---|---|---|---|
| 1/1/2023 | 1/1/2023 - 3/31/2023 | Q1.23 Base/Supplemental Rent | $ | 354,842.07 |
| 1/12/2023 | 1/1/2023 - 3/31/2023 | Late Charge | $ | 21,290.52 |
| 4/1/2023 | 1/12/2023 - 3/31/2023 | Additional Rent through 4/1/2023 | $ | 11,904.51 |
| 4/7/2023 | 4/1/2023 - 4/7/2023 | Additional Rent through 4/7/2023 | $ | 1,172.08 |
| 4/1/2023 | 4/1/2023 - 6/30/2023 | Q2.23 Base/Supplemental Rent | $ | 358,784.77 |
| | | **Total payment due:** | **$** | **747,993.95** |

**Wire Payments to:**
Bank Name:      U.S. Bank National Association
ABA Number:     091000022
Account Name:   Structured Finance Wire Clearing
Account:        173103322058
Reference:      Twain Funding II LLC Collection Acct 273761000

**\*Add additional rent if no payment is received by:**                                **4/1/2023**
Per diem additional rent (should be added for each additional day)         $         167.44

\*If Rent is not received by 4/11/2023, an additional late charge will be assessed along with a new per diem